FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ AUG 26 2026 ★
LONG ISLAND OFFICE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**(Central Islip)**

Mendelssohn Joseph,

Plaintiff,

v.

Ally Financial Inc.,

Defendant.

**Civil Action No. __________**

CV 26 5261

**COMPLAINT AND DEMAND FOR JURY TRIAL**

J. Reyes

RECEIVED
AUG 26 2026
EDNY PRO SE OFFICE

WICKS, M.J.

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Mendelssohn Joseph ("Plaintiff"), proceeding pro se, respectfully alleges as follows:

## I. INTRODUCTION

1. This action arises from Defendant Ally Financial Inc.'s unlawful, reckless, and ongoing furnishing of inaccurate credit information in violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq.

2. Despite clear documentary evidence, internal contradictions within its own records, and formal disputes transmitted through consumer reporting agencies, Defendant persisted in reporting false and misleading information regarding Plaintiff's account, including a fabricated past-due balance and a charge-off designation.

3. In February 2024, Plaintiff received the first notice from Defendant in the form of a final bill. Upon reviewing the final bill, Plaintiff identified inaccuracies and overcharges in the amount claimed.

4. After receiving the final bill, Plaintiff repeatedly contacted Defendant, spoke with representatives and supervisory personnel at multiple levels, identified the disputed overcharges, and submitted supporting proof demonstrating that the charges were inaccurate.

5. The parties' communications and repeated back-and-forth continued for months without a substantive resolution. In September 2024, despite Plaintiff's prior notices and supporting proof, Defendant referred the alleged debt to a collection agency. Since then, Defendant has furnished or updated the charge-off each month to all three nationwide consumer reporting agencies Experian, Equifax, and TransUnion causing recurring negative effects on Plaintiff's credit profile and creditworthiness.

6. From February 2024 through the present, spanning more than two years, Plaintiff has made more than 50 telephone calls concerning the disputed account and Defendant's continued efforts to collect and report the alleged debt.

7. Defendant's conduct was not a clerical error. It was a sustained failure to investigate, verify, or correct information that Defendant knew, or should have known, was inaccurate.

8. As a direct and foreseeable result, Plaintiff's credit profile was severely damaged, causing cascading financial consequences, including the loss of a home purchase, significantly increased borrowing costs, reduced access to credit, reputational harm, emotional distress, and substantial economic and opportunity losses.

## II. JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the FCRA, 15 U.S.C. § 1681 et seq.

10. This Court has supplemental jurisdiction over Plaintiff's related state law claims pursuant to 28 U.S.C. § 1367 because those claims arise from the same facts and transactions as the federal claims.

11. Venue is proper in this District under 28 U.S.C. § 1391(b) because Plaintiff resides in Suffolk County, New York, and the injuries occurred within this District.

12. The Central Islip courthouse is the appropriate courthouse because Plaintiff resides in Suffolk County and a substantial part of the harm occurred in Suffolk County.

## III. PARTIES

13. Plaintiff Mendelssohn Joseph is a natural person residing in Suffolk County, New York.

14. Defendant Ally Financial Inc. is a national financial institution headquartered at Ally Detroit Center, 500 Woodward Avenue, Detroit, Michigan 48226, and is a furnisher of credit information to consumer reporting agencies.

15. Defendant is subject to the duties imposed on furnishers of information under the FCRA, including the duty to conduct a reasonable investigation after receiving notice of a consumer dispute from a consumer reporting agency.

## IV. FACTUAL BACKGROUND

### A. The Lease and Accurate Account History

16. In or about August 2021, Plaintiff entered into a motor vehicle lease with Defendant for a term of 24 months, allowing 10,000 miles annually.

17. The monthly mileage allowance was approximately 833.33 miles per month.

18. The lease was extended for an additional four months through December 23, 2023, bringing the total permitted mileage to approximately 23,333 miles.

19. Plaintiff returned the vehicle on December 28, 2023, within a grace period confirmed by Defendant through December 30, 2023.

20. At return, the odometer reflected 23,468 miles.

21. Based on the lease terms and extension, the actual mileage overage was approximately 135 miles.

22. Despite these facts, Defendant assessed charges based on an alleged overage of 964 miles, a figure that is mathematically inconsistent with the lease terms, extension period, and odometer record.

**B. False Charges and Internal Contradictions**

23. Defendant further claimed Plaintiff owed a past-due payment of $651.60.

24. That assertion was directly contradicted by Defendant's own customer reporting portal, which reflected no late or missed payments.

25. Defendant also reported inconsistent balances, including an alleged total due of $1,123.70 while internal calculations reflected $1,290.10, creating an unexplained discrepancy of $166.40.

26. These contradictions demonstrate that Defendant's reporting was inaccurate, unreliable, and unsupported by its own records.

27. Plaintiff provided documentary proof including bank statements, account activity records, odometer documentation, and Defendant's own written confirmation of the grace period.

28. Defendant failed to provide competent documentation proving that the alleged past-due payment, alleged excess mileage, charge-off status, or alleged balance was accurate.

**C. Plaintiff's Disputes and Defendant's Failure to Investigate**

29. Plaintiff disputed the account and provided supporting documentation demonstrating that the reported information was inaccurate and unverifiable.

30. Plaintiff submitted disputes to consumer reporting agencies, including Experian, Equifax, and TransUnion. Plaintiff will supplement the record with the specific dispute dates and reinvestigation results as documents are obtained and organized.

31. Upon information and belief, the consumer reporting agencies notified Defendant of the disputes pursuant to 15 U.S.C. § 1681i(a)(2).

32. After receiving notice of dispute from one or more consumer reporting agencies, Defendant was required to conduct a reasonable investigation, review all relevant information, and correct or delete any inaccurate, incomplete, or unverifiable information.

33. Defendant failed to conduct a reasonable investigation.

34. Defendant failed to review all relevant information provided by Plaintiff.

35. Defendant failed to correct or delete inaccurate and unverifiable information.

36. Defendant continued furnishing false information, including a delinquency and charge-off status.

**D. Collapse of Plaintiff's Creditworthiness**

37. As a direct result of Defendant's inaccurate reporting, Plaintiff's credit score dropped to a range between approximately 550 and 625 across the major consumer reporting agencies.

38. This decline placed Plaintiff in a materially worse credit category and impaired Plaintiff's ability to obtain financing, maintain existing credit relationships, and access favorable terms.

**E. Severe Financial Harm**

39. In September 2024, Plaintiff was under contract to purchase a home located at 6 Hidden Pond, Muttontown, New York 11545.

40. Due to Defendant's inaccurate charge-off reporting and the resulting impairment of Plaintiff's creditworthiness, Plaintiff was unable to secure financing and lost the purchase opportunity.

41. In October 2024, Plaintiff and his spouse proceeded with the purchase of an alternative property under materially worse financial terms.

42. Because Plaintiff's creditworthiness had been impaired, only Plaintiff's spouse was able to qualify for financing.

43. The required down payment increased from 20 percent to 25 percent, requiring an additional $50,000 out-of-pocket contribution.

44. The interest rate increased from 5.9 percent to 6.375 percent.

45. Over the life of the loan, this increased rate will result in approximately $940,000 in total interest paid, substantially greater than the interest burden Plaintiff and his spouse would have faced under the original terms.

**F. Continued Financial Restrictions**

46. Defendant's reporting caused Plaintiff's Mastercard Black Card spending limit to be reduced from $50,000 to $7,800.

47. Defendant's reporting also caused Plaintiff's American Express Platinum Card to be restricted to approximately $13,000 in available spending capacity.

48. Defendant's reporting caused Plaintiff's American Express Marriott Bonvoy Card limit to be reduced from $33,000 to $20,000.

49. Since September 2024, Plaintiff has been repeatedly denied new credit card applications and new credit opportunities.

50. In December 2024, Plaintiff was denied credit approval to lease a vehicle, requiring Plaintiff's spouse to lease the vehicle on Plaintiff's behalf.

51. These credit restrictions impaired Plaintiff's liquidity, financial flexibility, business capacity, and ability to participate in real estate and investment opportunities.

### G. Time and Effort Damages

52. Plaintiff has spent approximately 250 hours attempting to correct Defendant's errors, including calls to Defendant, written disputes, credit bureau disputes, direct disputes to Defendant, and legal preparation.

53. This time represents lost professional productivity, lost income-generating opportunity, and a substantial personal burden caused by Defendant's conduct.

## V. CLAIMS FOR RELIEF

### COUNT I - WILLFUL VIOLATION OF FCRA

*(15 U.S.C. § 1681s-2(b))*

54. Plaintiff repeats and incorporates all prior paragraphs as if fully set forth herein.

55. After receiving notice of Plaintiff's dispute from one or more consumer reporting agencies, Defendant was required to conduct a reasonable investigation, review all relevant information, and correct or delete inaccurate or unverifiable information.

56. Defendant failed to conduct a reasonable investigation.

57. Defendant failed to review the documents and facts showing that the alleged past-due payment, mileage overage, balance, and charge-off status were inaccurate.

58. Defendant failed to correct or delete the inaccurate reporting.

59. Defendant continued furnishing inaccurate and derogatory information after notice of dispute.

60. Defendant's conduct was willful, reckless, and in disregard of Plaintiff's rights under the FCRA.

**COUNT II - NEGLIGENT VIOLATION OF FCRA**

*(15 U.S.C. § 1681o)*

61. Plaintiff repeats and incorporates all prior paragraphs as if fully set forth herein.

62. In the alternative, Defendant negligently failed to comply with its duties under the FCRA.

63. Defendant's negligent failure to reasonably investigate, verify, correct, or delete inaccurate information caused Plaintiff actual damages.

**COUNT III - RECKLESS MISREPRESENTATION**

*(New York Law)*

64. Plaintiff repeats and incorporates all prior paragraphs as if fully set forth herein.

65. Defendant knowingly or recklessly represented that Plaintiff owed a delinquent balance and that the account was properly reported as charged off.

66. Defendant's own records contradicted those representations.

67. Defendant acted with reckless disregard for the truth by continuing to report information contradicted by payment records, portal records, mileage records, and balance discrepancies.

68. Plaintiff was entitled to rely on accurate credit reporting in pursuing financing, credit, real estate transactions, and vehicle leasing.

69. Plaintiff suffered damages as a direct and proximate result of Defendant's reckless misrepresentations.

**COUNT IV - DEFAMATION**

*(Supplemental State Law Claim)*

70. Plaintiff repeats and incorporates all prior paragraphs as if fully set forth herein.

71. Defendant published false derogatory credit information about Plaintiff to third parties, including consumer reporting agencies and lenders who accessed Plaintiff's credit profile.

72. The published information falsely indicated that Plaintiff failed to meet financial obligations and that the account was properly delinquent or charged off.

73. The statements were false, harmful, and damaging to Plaintiff's reputation, creditworthiness, and financial standing.

74. Plaintiff suffered reputational and economic damages as a result.

## VI. WILLFULNESS AND PUNITIVE DAMAGES ALLEGATIONS

75. Defendant had actual or constructive knowledge of the inaccuracies because its own records contradicted the derogatory information being furnished.

76. Defendant knew or should have known that the alleged past-due payment of $651.60 contradicted its own portal records showing no late or missed payments.

77. Defendant knew or should have known that the 964-mile excess mileage claim was mathematically inconsistent with the lease terms, extension period, and odometer reading.

78. Defendant knew or should have known that inconsistent balance figures rendered the account unverifiable.

79. Defendant's conduct satisfies the willfulness standard under *Safeco Insurance Co. of America v. Burr*, 551 U.S. 47 (2007), because reckless disregard of statutory duties constitutes willful noncompliance under the FCRA.

80. Defendant's failure to conduct a meaningful investigation after notice is contrary to the investigation principles recognized in *Cushman v. Trans Union Corp.*, 115 F.3d 220 (3d Cir. 1997).

81. Defendant's continued furnishing of inaccurate information after notice is also consistent with furnisher liability principles recognized in *Gorman v. Wolpoff & Abramson LLP*, 584 F.3d 1147 (9th Cir. 2009).

82. Defendant's conduct created an unjustifiably high risk of violating the FCRA, and that risk was known or so obvious that it should have been known.

83. Punitive damages are warranted to punish and deter Defendant's reckless disregard of federal credit reporting obligations.

## VII. DAMAGES

84. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered substantial, measurable, and ongoing damages.

85. Plaintiff lost the opportunity to purchase the property located at 6 Hidden Pond, Muttontown, New York 11545, including lost appreciation, lost equity accumulation, lost financing opportunity, and lost market positioning.

86. Plaintiff was forced into inferior financing circumstances for a later property purchase, requiring an additional $50,000 down payment because the required down payment increased from 20 percent to 25 percent.

87. Plaintiff incurred materially higher borrowing costs because the interest rate increased from 5.9 percent to 6.375 percent, resulting in approximately $940,000 in total lifetime interest payments.

88. Plaintiff suffered loss of available credit and liquidity, including a reduction of the Mastercard Black Card limit from $50,000 to $7,800, restrictions on the American Express Platinum Card to approximately $13,000, and a reduction of the American Express Marriott Bonvoy Card from $33,000 to $20,000.

89. Plaintiff suffered repeated denials of new credit opportunities from September 2024 through the present.

90. Plaintiff was denied credit approval for an auto lease in December 2024, forcing Plaintiff's spouse to obtain the lease instead.

91. Plaintiff's credit scores dropped from approximately 800 to the 550-625 range across Experian, Equifax, and TransUnion, impairing Plaintiff's standing with lenders and financial institutions.

92. Plaintiff suffered opportunity cost damages, including lost investment opportunities, lost leverage, increased capital costs, delayed transactions, lost profits, and time-value-of-money losses.

93. Plaintiff spent approximately 250 hours addressing Defendant's misconduct, including communications, disputes, document preparation, and legal drafting.

94. Plaintiff suffered emotional distress, frustration, stress, reputational harm, and loss of confidence in financial standing.

95. Plaintiff is entitled to actual damages, statutory damages, punitive damages, costs, and attorney's fees as permitted by law.

## VIII. PRAYER FOR RELIEF

96. WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant as follows:

97. Award compensatory damages in an amount to be proven at trial.

98. Award opportunity cost damages in an amount to be proven at trial.

99. Award statutory damages under the FCRA.

100. Award punitive damages for willful and reckless noncompliance.

101. Order deletion, correction, or suppression of all inaccurate reporting relating to the disputed account.

102. Award costs and any recoverable fees allowed by law.

103. Award total damages in an amount not less than $1,000,000.

104. Grant such other and further relief as the Court deems just and proper.

## IX. JURY DEMAND

105. Plaintiff demands trial by jury on all issues so triable.

Dated: 08/26/2026

Suffolk County, New York

Respectfully submitted,

Mendelssohn Joseph

Mendelssohn Joseph
Plaintiff Pro Se
6 Plymouth Road Dix Hill NY 11746
Mjoseph776@yahoo.com
516-424-7775